```
RECEIPT #_____
AMOUNT $  150 ᵒᵒ
SUMMONS ISSUED_____
LOCAL RULE 4.1_____
WAIVER FORM_____
MCF ISSUED_____
BY DPTY. CLK. ___M__
DATE    3-24-04
```

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL PISNOY, Derivatively on Behalf of SONUS NETWORKS, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>HASSAN M. AHMED, RUBIN GRUBER, EDWARD T. ANDERSON, PAUL J. FERRI, ALBERT A. NOTINI, PAUL J. SEVERINO, PAUL R. JONES, EDWARD N. HARRIS, J. MICHAEL O'HARA and STEVEN J. NILL,<br><br>Defendants,<br><br>-and-<br><br>SONUS NETWORKS, INC., a Delaware corporation,<br><br>Nominal Defendant. | Civil Action No. _____<br>DERIVATIVE ACTION<br><br>DEMAND FOR JURY TRIAL<br><br>04cv10576 DPW |

**VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTIES, ABUSE OF CONTROL, GROSS MISMANAGEMENT, WASTE OF CORPORATE ASSETS AND UNJUST ENRICHMENT**

I.

## INTRODUCTION

1.  This is a shareholder derivative action brought in the right of and for the benefit of nominal defendant Sonus Networks, Inc. ("Sonus" or the "Company") against its Board of Directors (the "Board") and certain of its officers seeking to remedy defendants' breaches of fiduciary duties and other violations of law arising out of false statements made to the investing public between the period April 9, 2003 through February 11, 2004 (the "Relevant Period"). Defendants' misconduct has caused severe, irreparable injury and damages to the Company, particularly to its reputation and goodwill in the investment and business community, has exposed the Company to millions of dollars in potential liability for violations of law, has caused the Company to lose more than $1.2 billion in market capitalization or 46% of the Company, to be downgraded by multiple analysts, and threatens to virtually destroy this once valuable franchise.

II.

## SUMMARY OF THE ACTION

2.  Sonus is a provider of voice infrastructure solutions for the new public network. The Company's products are a new generation of carrier-class switching equipment and software that enable voice services to be delivered over packet-based networks. By enabling voice traffic to be carried over these packet-based networks, the Company's products will accelerate the convergence of voice and data into the public network. The Company's suite of voice infrastructure solutions includes the GSX9000 Open Services Switch, in Insignus Softswitch and the Sonus Insight Management System.

1

3.      On January 20, 2004, shares of Sonus closed at $9.91 per share representing a two-year closing high. In fact, Sonus shares had jumped over 800% in the preceding year. However, after the close of the market on the 20th, Sonus announced that it was delaying the release of its Q4 and full year 2003 financial results pending the completion of its Fiscal Year ("FY") 2003 audit. On this news, the stock plunged 18.7%, or $1.85 per share in after-hours trading eventually closing on the 21st at $8.93 on unusually large trading.

4.      Then, on February 11, 2004, Sonus, after the close of trading, stunned the market and investing public when it announced that it had identified certain issues, practices and actions of certain employees relating to both timing of revenue recognition from certain customer transactions and to certain other financial statement accounts, which may affect the Company's FY 2003 financial statements and possibly financial statements for prior periods. The Company also stated in was reassessing the proper periods in which revenue should be recognized for these transactions. Defendant Hassan Ahmed ("Ahmed"), President and Chief Executive Officer ("CEO"), commented on the shocking revelation, stating in relevant part:

> "We are deeply concerned and disappointed to have discovered that certain employees at Sonus Networks were engaged in behavior that violated our code of conduct and may have compromised the integrity of our financial reporting."

5.      On this shocking news, the next day the Company's stock plummeted, eventually closing at $5.39 at the close of trading on the 12th on extremely heaving trading on the day of over 96 million shares.

6. Thus, since the Company's announcement on January 20, 2004 that it would be delaying the release of its Q4 financial statements due to an audit, *the defendants' actions have erased 46% of the Company's market capitalization, or about $1.2 billion dollars.*

7. In addition, on February 12, 2004, the Company was downgraded by numerous analysts including Wachovia, Goldman Sachs, Legg Mason and Smith Barney. Furthermore, the Company has had to waste valuable corporate assets by hiring the law firm of Hale and Dorr LLP ("Hale and Dorr") and PricewaterhouseCoopers to conduct an independent investigation into the wrongdoing alleged herein. The Company also had to notify the Securities and Exchange Commission ("SEC") of this investigation.

8. Throughout the duration of the Relevant Period, Sonus' stock traded at artificially inflated levels based on these false financial results and statements. Certain defendants and Company insiders took further advantage, disposing of 264,334 shares of Sonus stock during the Relevant Period at prices as high as $8.58 per share, illegally and in breach of their fiduciary duties reaping profits of nearly $2 million dollars.

9. The financial statements of the Company made during the Relevant Period, all of which implicitly and/or expressly were prepared in conformity with Generally Accepted Accounting Principals ("GAAP"), were materially false and misleading because defendants caused the Company to materially overstate its earnings during the Relevant Period, which also had the effect of overstating assets. Sonus will have to admit that it inappropriately recorded transactions included in its FY 2003 results, and will have to restate those results to remove millions in improperly reported revenues, such that its FY 2003 financial statements were not a fair presentation of Sonus' results and were presented in violation of GAAP.

10.		As a direct result of this illegal course of conduct, the Company has been exposed to tens of millions of dollars in potential liability for violations the of securities laws and regulations and has been named in numerous federal securities class action lawsuits filed in the United States District Court for the District of Massachusetts, on behalf of investors who purchased Sonus' shares. These lawsuits allege that investors purchased shares of the Company based on false and materially misleading statements regarding the financial condition of the Company and that they have been significantly damaged thereby. Specifically, those actions allege that defendants failed to disclose and/or misrepresented the following facts, among others: (a) that defendants had improperly and untimely recognized revenue on certain of the Company's customer transactions; (b) that defendants violated GAAP; and (c) as a result of the foregoing, the Company's revenues, net income and earnings per share published during the Relevant Period were materially false and misleading. These actions also allege the defendants used the Company's artificially inflated stock price to complete a public offering of 20 million shares of the Company's stock. This will subject the Company to strict liability under Section 11 of the Securities Act of 1933 for filing a false and misleading registration statement in connection with the offering.

### III.

### JURISDICTION AND VENUE

11.		This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332 (a)(2) in that plaintiff and defendants are citizens of different states and the matter in controversy exceeds $75,000, exclusive of interest and costs. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. §1367(a).

12.     This action is not a collusive one designed to confer jurisdiction on a court of the United States, which it would not otherwise have.

13.     Venue is proper in the Court because nominal defendant Sonus is headquartered in this District and thus a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, occurred in this District. One or more of the defendants either resides in or maintains executive offices in this District, and defendants have substantial compensation in this District by engaging in numerous activities and conducting business here, which had an effect in this District.

## IV.

## PARTIES

14.     Plaintiff Michael Pisnoy, is and was at relevant times complained of herein, a shareholder of nominal defendant Sonus. Plaintiff is a citizen of Florida.

15.     Nominal defendant Sonus is a Delaware corporation with its principal executive offices located at 5 Carlisle Road, Westford, MA 01886.

16.     Defendant Ahmed was, at all relevant times, a director of Sonus, its President and CEO. As an officer and director of Sonus, Ahmed owed a duty to the Company and its shareholders to be reasonably informed about the business and operations of the Company. Moreover, as its President and CEO, Ahmed had also assumed important managerial responsibilities at Sonus which required him to be well informed about the day-to-day operations of the Company. Rather than fulfill these important fiduciary duties Ahmed owed to Sonus and its shareholders he, upon information and belief, actively participated in or knowingly encouraged, sponsored or approved many of the wrongful acts or omissions complained of

5

herein, and/or breached his fiduciary duties to the shareholders of Sonus by purposefully, recklessly and/or negligently disregarding these wrongful acts or omissions. During the Relevant Period, Ahmed, as CEO, signed the Company's false financial statements and therefore Ahmed is a direct participant in the wrongdoing. North Bridge Venture Partners and Matrix Partners, two prominent venture capitalist firms, both made significant venture investments in Sonus and have made millions of dollars as a result of their investments in Sonus. Defendant Edward T. Anderson ("Anderson") is a managing partner at Bridge Venture Partners and defendant Paul J. Ferri ("Ferri") is a general partner of Matrix Partners. Both Anderson and Ferri serve as directors of Sonus and both are on the Company's Audit Committee. Ahmed also served on the board of Winphoria Networks along with Ferri. Matrix Partners and North Bridge Partners were both venture capitalist in Winphoria Networks. Moreover, Ferri serves on Sonus' Compensation Committee which determines Ahmed's salary, bonuses and stock options. Ahmed, along with defendant Rubin Gruber ("Gruber"), co-founder of Sonus, initially invested in Narad Networks, a start-up telecommunications company also located in Westford, MA, along with Gruber. By virtue of his executive positions with the Company, his personal participation in the underlying misconduct and his extensive and long-term personal, professional, and financial relationships with Anderson, Gruber and Ferri, and the other members of the Sonus Board, Ahmed is not independent, is not disinterested and could not have adequately considered a pre-suit demand to bring the allegations contained herein. Ahmed is a citizen of Massachusetts.

17.  Defendant Gruber was, at all relevant times, a director and Chairman of the Board of Sonus. Gruber was one of the founders of Sonus. As a director of Sonus, Gruber owed a duty to the Company and its shareholders to be reasonably informed about the business and operations

6

of the Company. Moreover, as its Chairman, Gruber had also assumed important managerial responsibilities at Sonus which required him to be well informed about the day-to-day operations of the Company. Rather than fulfill these important fiduciary duties Gruber owed to Sonus and its shareholders he, upon information and belief, actively participated in or knowingly encouraged, sponsored or approved many of the wrongful acts or omissions complained of herein, and/or breached his fiduciary duties to the shareholders of Sonus by purposefully, recklessly and/or negligently disregarding these wrongful acts or omissions. As detailed in the preceding paragraph, North Bridge Venture Partners and Matrix Partners, two prominent venture capitalist firms, both made significant venture investments in Sonus and have made millions of dollars as a result of their investments in Sonus. Defendant Anderson is a managing partner at Bridge Venture Partners and defendant Ferri is a general partner of Matrix Partners. Both Anderson and Ferri serve as directors of Sonus and both are on the Company's Audit Committee. Moreover, Ferri serves on Sonus' Compensation Committee which determines Gruber's salary, bonuses and stock options. Gruber along with Ahmed initially invested in Narad Networks, a startup telecommunications company also located in Westford, MA. By virtue of his positions with the Company, his personal participation in the underlying misconduct and his extensive and long-term personal, professional, and financial relationships with Anderson and Ferri, and the other members of the Sonus Board, Gruber is not independent, is not disinterested and could not have adequately considered a pre-suit demand to bring the allegations contained herein. Gruber is a citizen of Massachusetts.

18.     Defendant Anderson was, at all relevant times, a director of Sonus and a member of its Audit Committee. As a director of Sonus, Anderson owed a duty to the Company and its

shareholders to be reasonably informed about the business and operations of the Company. Moreover, as a member of its Audit Committee, Anderson had also assumed important managerial responsibilities at Sonus which required him to be well informed about the day-to-day operations of the Company particularly, as a member of the Audit Committee, with respect to the Company's internal systems of accounting controls and procedures, and ensuring the Company's financial statements complied with GAAP. Rather than fulfill these important fiduciary duties Anderson owed to Sonus and its shareholders he, upon information and belief, actively participated in or knowingly encouraged, sponsored or approved many of the wrongful acts or omissions complained of herein, and/or breached his fiduciary duties to the shareholders of Sonus by purposefully, recklessly and/or negligently disregarding these wrongful acts or omissions. As a member of the Audit Committee, Anderson approved the Company's financial statements and therefore Anderson is a direct participant in the wrongdoing. Moreover, during the Relevant Period, Anderson engaged in massive insider trading disposing of 65,584 shares of his personally held Sonus stock for proceeds of $448,918.34. As detailed above, North Bridge Venture Partners and Matrix Partners, two prominent venture capitalist firms, both made significant venture investments in Sonus and have made millions of dollars as a result of their investments in Sonus. Defendant Anderson is a managing partner at Bridge Venture Partners and defendant Ferri is a general partner of Matrix Partners. Both Anderson and Ferri serve as directors of Sonus and both are on the Company's Audit Committee. In addition, defendant Ahmed also served on the board of Winphoria Networks along with Ferri. Matrix Partners and North Bridge Partners, in which Anderson is a managing partner, were both venture capitalist in Winphoria Networks. By virtue of his positions with the Company, his massive stock sales, his

8

personal participation in the underlying misconduct and his extensive and long-term personal, professional, and financial relationships with Ahmed, Gruber and Ferri, and the other members of the Sonus Board, Anderson is not independent, is not disinterested and could not have adequately considered a pre-suit demand to bring the allegations contained herein. Anderson is a citizen of Massachusetts.

19. Defendant Albert A. Notini ("Notini") was, at all relevant times, a director of Sonus. As a director of Sonus, Notini owed a duty to the Company and its shareholders to be reasonably informed about the business and operations of the Company. Rather than fulfill these important fiduciary duties Notini owed to Sonus and its shareholders he, upon information and belief, actively participated in or knowingly encouraged, sponsored or approved many of the wrongful acts or omissions complained of herein, and/or breached his fiduciary duties to the shareholders of Sonus by purposefully, recklessly and/or negligently disregarding these wrongful acts or omissions. Notini was previously a Senior Partner at the Boston law firm of Hale and Dorr, the same firm the Company has hired to conduct an independent investigation into the wrongdoing alleged herein. Notini is a citizen of Massachusetts.

20. Defendant Ferri was, at all relevant times, a director of Sonus and a member of its Audit and Compensation Committees. As a director of Sonus, Ferri owed a duty to the Company and its shareholders to be reasonably informed about the business and operations of the Company. Moreover, as a member of its Audit and Compensation Committees, Ferri had also assumed important managerial responsibilities at Sonus which required him to be well informed about the day-to-day operations of the Company particularly, as a member of the Audit Committee, with respect to the Company's internal systems of accounting controls and

9

procedures, and ensuring the Company's financial statements complied with GAAP. Rather than fulfill these important fiduciary duties Ferri owed to Sonus and its shareholders he, upon information and belief, actively participated in or knowingly encouraged, sponsored or approved many of the wrongful acts or omissions complained of herein, and/or breached his fiduciary duties to the shareholders of Sonus by purposefully, recklessly and/or negligently disregarding these wrongful acts or omissions. As a member of the Audit Committee, Ferri approved the Company's financial statements and therefore Ferri is a direct participant in the wrongdoing. Moreover, Ferri serves on Sonus' Compensation Committee which determines Ahmed and Gruber's salary, bonuses and stock options. As detailed above, North Bridge Venture Partners and Matrix Partners, two prominent venture capitalist firms, both made significant venture investments in Sonus and have made millions of dollars as a result of their investments in Sonus. Defendant Anderson is a managing partner at Bridge Venture Partners and defendant Ferri is a general partner of Matrix Partners. Both Anderson and Ferri serve as directors of Sonus and both are on the Company's Audit Committee. In addition, defendant Ahmed also served on the board of Winphoria Networks along with Ferri. Matrix Partners and North Bridge Partners, in which Anderson is a managing partner, were both venture capitalist in Winphoria Networks. By virtue of his positions with the Company, his personal participation in the underlying misconduct and his extensive and long-term personal, professional, and financial relationships with Ahmed, Gruber and Anderson, and the other members of the Sonus Board, Ferri is not independent, is not disinterested and could not have adequately considered a pre-suit demand to bring the allegations contained herein. Ferri is a citizen of Massachusetts.

21. Defendant Paul J. Severino ("Severino") was, at all relevant times, a director of Sonus and a member of its Audit and Compensation Committees. As a director of Sonus, Severino owed a duty to the Company and its shareholders to be reasonably informed about the business and operations of the Company. Moreover, as a member of its Audit and Compensation Committees, Severino had also assumed important managerial responsibilities at Sonus which required him to be well informed about the day-to-day operations of the Company particularly, as a member of the Audit Committee, with respect to the Company's internal systems of accounting controls and procedures, and ensuring the Company's financial statements complied with GAAP. Rather than fulfill these important fiduciary duties Severino owed to Sonus and its shareholders he, upon information and belief, actively participated in or knowingly encouraged, sponsored or approved many of the wrongful acts or omissions complained of herein, and/or breached his fiduciary duties to the shareholders of Sonus by purposefully, recklessly and/or negligently disregarding these wrongful acts or omissions. As a member of the Audit Committee, Severino approved the Company's financial statements and therefore Severino is a direct participant in the wrongdoing. Moreover, Severino serves on Sonus' Compensation Committee which determines Ahmed and Gruber's salary, bonuses and stock options. Severino also served on the board of PhotonEx Corp., another telecommunications start-up from Massachusetts, along with defendant Ahmed. By virtue of his executive positions with the Company, his personal participation in the underlying misconduct and his extensive and long-term personal, professional, and financial relationships with Ahmed, and the other members of the Sonus Board, Severino is not independent, is not disinterested and could not have adequately

considered a pre-suit demand to bring the allegations contained herein. Severino is a citizen of Massachusetts.

22.     Defendant Edward N. Harris ("Harris") was, at all relevant times, a Vice President of Sonus. As an officer of Sonus, Harris owed a duty to the Company and its shareholders to be reasonably informed about the business and operations of the Company. Moreover, as a Vice President, Harris had also assumed important managerial responsibilities at Sonus which required him to be well informed about the day-to-day operations of the Company. Rather than fulfill these important fiduciary duties Harris owed to Sonus and its shareholders he, upon information and belief, actively participated in or knowingly encouraged, sponsored or approved many of the wrongful acts or omissions complained of herein, and/or breached his fiduciary duties to the shareholders of Sonus by purposefully, recklessly and/or negligently disregarding these wrongful acts or omissions. During the Relevant Period, Harris engaged in massive insider trading disposing of 30,000 shares of his personally held Sonus stock for proceeds of $204,600. Harris is a citizen of Massachusetts.

23.     Defendant J. Michael O'Hara ("O'Hara") was, at all relevant times, a Vice President of Sonus. As an officer of Sonus, O'Hara owed a duty to the Company and its shareholders to be reasonably informed about the business and operations of the Company. Moreover, as a Vice President, O'Hara had also assumed important managerial responsibilities at Sonus which required him to be well informed about the day-to-day operations of the Company. Rather than fulfill these important fiduciary duties O'Hara owed to Sonus and its shareholders he, upon information and belief, actively participated in or knowingly encouraged, sponsored or approved many of the wrongful acts or omissions complained of herein, and/or breached his

fiduciary duties to the shareholders of Sonus by purposefully, recklessly and/or negligently disregarding these wrongful acts or omissions. During the Relevant Period, O'Hara engaged in massive insider trading disposing of 68,750 shares of his personally held Sonus stock for proceeds of $489,613. O'Hara is a citizen Of Massachusetts.

24.     Defendant Paul R. Jones ("Jones") was, at all relevant times, a Vice President of Sonus. As an officer of Sonus, Jones owed a duty to the Company and its shareholders to be reasonably informed about the business and operations of the Company. Moreover, as a Vice President, Jones had also assumed important managerial responsibilities at Sonus which required him to be well informed about the day-to-day operations of the Company. Rather than fulfill these important fiduciary duties Jones owed to Sonus and its shareholders he, upon information and belief, actively participated in or knowingly encouraged, sponsored or approved many of the wrongful acts or omissions complained of herein, and/or breached his fiduciary duties to the shareholders of Sonus by purposefully, recklessly and/or negligently disregarding these wrongful acts or omissions. During the Relevant Period, Jones engaged in massive insider trading disposing of 100,000 shares of his personally held Sonus stock for proceeds of $857,500. Jones is a citizen of Massachusetts.

25.     Defendant Stephen J. Nill ("Nill") was, at all relevant times, Chief Financial Officer ("CFO") of Sonus. As an officer of Sonus, Nill owed a duty to the Company and its shareholders to be reasonably informed about the business and operations of the Company. Moreover, as CFO, Nill had also assumed important managerial responsibilities at Sonus which required him to be well informed about the day-to-day operations of the Company particularly, as a member of the Audit Committee, with respect to the Company's internal systems of

accounting controls and procedures, and ensuring the Company's financial statements complied with GAAP. Rather than fulfill these important fiduciary duties Nill owed to Sonus and its shareholders he, upon information and belief, actively participated in or knowingly encouraged, sponsored or approved many of the wrongful acts or omissions complained of herein, and/or breached his fiduciary duties to the shareholders of Sonus by purposefully, recklessly and/or negligently disregarding these wrongful acts or omissions. During the Relevant Period, Nill as CFO, signed the Company's false and misleading financial statements. Nill is a citizen of Massachusetts.

26.     The Defendants identified above in ¶¶16-25 are collectively referred to hereinafter as the "Individual Defendants." For demand futility purposes, the defendants identified in ¶¶16-21, who make up the current Board of Sonus, are referred to as the "Director Defendants." The Defendants identified in ¶¶18, 22-24 are referred to as the "Insider Selling Defendants."

V.

**FACTUAL ALLEGATIONS**

27.     On January 20, 2004, shares of Sonus closed at $9.91 per share representing a two-year closing high. In fact, Sonus shares had jumped over 800% in the preceding year. However, after the close of the market on the 20th, the Individual Defendants caused the Company to issue a press release entitled "Sonus Networks Delays Release of Its Q4 and FY2003 Financial Results." The press release stated in relevant part:

> Sonus Networks today postponed the release of its Q4 and full year 2003 financial results pending the completion of its 2003 audit. Upon completion of the audit, the Company will reschedule the conference call and provide further details.

14

28.  On this news, shares of Sonus plunged 18.7%, or $1.85 per share in after-hours trading eventually closing on the 21st at $8.93 on unusually large trading.

29.  Then, on February 11, 2004, Sonus, after the close of trading, stunned the market and investing public when it announced that it had identified certain issues, practices and actions of certain employees relating to both timing of revenue recognition from certain customer transactions and to certain other financial statement accounts, which may affect the Company's FY 2003 financial statements and possibly financial statements for prior periods. The Company also stated in was reassessing the proper periods in which revenue should be recognized for these transactions. On that date, the Individual Defendants caused the Company to issue a press release entitled "Sonus Networks Provides Update on Status of Its Q4 and FY2003 Financial Results." The press release stated in relevant part:

> Sonus Networks today provided additional information regarding the delay in reporting its fourth quarter and full fiscal year financial results for the year ended December 31, 2003. In connection with the year-end audit, Sonus Networks and its independent auditors have identified certain issues, practices and actions of certain employees relating to both the timing of revenue recognized from certain customer transactions and to certain other financial statement accounts, which may affect the Company's 2003 financial statements and possibly financial statements for prior periods.
>
> The revenue issues identified relate to the proper timing of recognizing revenue from certain customer transactions, and not whether the sales can be recorded as revenue. For the customer transactions under review, the products have been delivered, customers are using the products in their networks and Sonus Networks has either received payment or is receiving payment for the products in the ordinary course. The Company is reassessing the proper periods in which revenue should be recognized for these transactions. Revenue or deferred revenue in periods previously reported could increase, decrease or remain unchanged in those periods as a result of this reassessment.
>
> In response to the issues identified, the Company has taken the following steps:

15

- The Company is performing a detailed review of the revenue timing issues and practices and of certain other financial statement accounts.

- The Audit Committee of Sonus Networks' Board of Directors is conducting an independent investigation, employing the services of Hale and Dorr LLP and PricewaterhouseCoopers.

- The Company has terminated certain non-executive employees.

- Sonus Networks has notified the Securities and Exchange Commission of the Company's independent investigation and is fully reporting the results of that ongoing investigation to the Commission.

"We are deeply concerned and disappointed to have discovered that certain employees at Sonus Networks were engaged in behavior that violated our code of conduct and may have compromised the integrity of our financial reporting," said Hassan Ahmed, president and CEO, Sonus Networks. "The Company responded promptly by taking appropriate measures to address these matters. We assure our shareholders, customers and employees that our management and Board of Directors are committed to taking all necessary steps to complete our review in an expeditious and comprehensive manner, and to prevent such problems from occurring in the future."

At this time, Sonus Networks cannot provide an anticipated date for the completion of its review or the year-end audit, or for the rescheduling of the release of its fourth quarter and fiscal year results for the year ended December 31, 2003.

30.  On this shocking news, the next day the Company's stock plummeted eventually closing at $5.39 at the close of trading on the 12th on extremely heaving trading on the day over of 96 million shares.

31.  Thus, since the Company's announcement on January 20, 2004 that it would be delaying the release of its Q4 financial statements due to an audit, *the defendants' actions have erased 46% of the Company's market capitalization, or about $1.2 billion.*

32.	In addition, on February 12, 2004, the Company was downgraded by numerous analysts including Wachovia, Goldman Sachs, Legg Mason and Smith Barney.

33.	Moreover, the Individual Defendants' conduct has resulted in certain analysts suspended their ratings and estimates on the Company. In a first-call analyst report issued by Thomas Weisel Partners LLC entitled "SONS: Suspending Rating and Estimates" stated in relevant part.

> SONS indefinitely delays reporting 4Q03 and FY03 results citing issues with timing of revenue recognition and "unethical" activities by certain employees. After SONS delayed its earnings call on Jan 20th, we advised investors to stay on the sidelines until further clarification was available from company. In a press release this evening (2/11), SONS stated that there may be restatements to its 2003 (and possibly previous years') financial statements and that certain non-executive employees had been fired due to "unethical" practices related to this issue. *In light of these new revelations, the historical basis of our model may be suspect and given the uncertainty regarding the magnitude and timing of resolution of this issue we are suspending our rating and estimates.*
>
> Highlights from the press release: (1) Independent auditors have identified "certain issues, practices and actions of certain employees relating to both the timing of revenue recognized from certain customer transactions and to certain other financial statement accounts." (2) What is at dispute here is "timing" of revenue recognition and not whether these revenues should have been recorded in the first place as the equipment has been delivered, customers are using them and the company has already received cash or is receiving cash for these products in the ordinary course of business. (3) Certain non-executive employees related to this matter have already been fired fired. (4) SONS may have to restate its financial statements by decreasing (or increasing) revenues or deferred revenues for these prior periods. (5) Given that the Company has no idea as to when an audit will be completed, SONS declined to provide a definitive date for reporting 4Q03 and FY03 results.
>
> *Suspending rating and estimates pending resolution. There are significant uncertainties that have emerged in the SONS story: (1) magnitude of revenue restatements are unknown, which makes the historical basis of our model suspect. (2) Timing of an eventual resolution is uncertain. (3) Other complexities may emerge like a potential SEC investigation. (4) Other "hard to quantify" issues such as potential delays in customer acceptance as they wait*